UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

INDIRA D. BHOGE, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

FRENKEL LAMBERT WEISS WEISMAN & GORDON LLP and MIDFIRST BANK,

Defendants.

**MEMORANDUM & ORDER**
25-CV-1836 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Indira D. Bhoge commenced the above action on behalf of herself and others similarly situated on April 3, 2025 against Defendants Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel LLP") and MidFirst Bank ("MidFirst") (collectively, "Defendants").[1] (Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on July 2, 2025 asserting ten causes of action claiming that Defendants conspired to defraud her of surplus money and award themselves inflated compound interest from the foreclosure sale of her home located at 146-02 88th Avenue, Jamaica, New York (the "Subject Property").  (Am. Compl., Docket Entry No. 29.)  Plaintiff asserts five causes of action against Defendants for violations of: (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), (*id.* ¶¶ 76–83); (2) New York General Business Law § 349 ("GBL § 349"), (*id.* ¶¶ 84–89); (3) the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"), (*id.* ¶¶ 94–126); (4) *prima facie* tort, (*id.* ¶¶ 149–53); and (5) conversion, (*id.* ¶¶ 154–60).  In addition,

---

[1] Plaintiff initially also named John and Jane Doe Investors 1–10 and John and Jane Doe 1–10 as Defendants but dismissed them from the action on June 11, 2025.  (Notice of Voluntary Dismissal, Docket Entry No. 21; Order dated June 11, 2025.)

Plaintiff alleges four claims individually against Frenkel LLP for violations of: (1) New York Judiciary Law § 487 ("Judiciary Law § 487"), (*id.* ¶¶ 90–93); (2) negligence, (*id.* ¶¶ 127–36); (3) gross negligence, (*id.* ¶¶ 137–39); and (4) legal malpractice, (*id.* ¶¶ 140–43). Plaintiff also alleges a claim individually against MidFirst for unjust enrichment, (*id.* ¶¶ 144–48). Plaintiff seeks against all Defendants a declaratory judgment, injunctive relief enjoining Defendants from continuing their alleged unlawful debt collection activities, actual and compensatory damages, treble damages pursuant to RICO and Judiciary Law § 487, statutory damages pursuant to the FDCPA, disbursements, costs, and attorneys' fees. (*Id.* at 40–41.)

Frenkel LLP and MidFirst move separately to dismiss the Amended Complaint, and Plaintiff opposes the motions.[2] For the reasons discussed below, the Court grants the motions and dismisses the Amended Complaint.

## I. Background

### a. The parties

Plaintiff is a New York State resident and a "consumer" as defined by the FDCPA. (*Id.* ¶¶ 21, 77.) MidFirst is an FDIC insured bank headquartered in Oklahoma that conducts business in the State of New York, (*id.* ¶ 22), is a "debt collector" as defined by the FDCPA, (*id.* ¶ 77), and acts as a mortgage noteholder and as a mortgage servicer that manages the loans, (*id.* ¶¶ 25–26). Frenkel LLP is a limited liability partnership located and doing business in New York State. (*Id.* ¶ 23.) MidFirst retained Frenkel LLP as a law firm to "collect on consumer debt that

---

[2] (Frenkel LLP's Mot. to Dismiss ("Frenkel LLP's Mot."), Docket Entry No. 32; Frenkel LLP's Mem. in Supp. of Frenkel LLP's Mot. ("Frenkel LLP's Mem."), appended to Frenkel LLP's Mot., Docket Entry No. 32-2; Frenkel LLP's Reply in Supp. of Frenkel LLP's Mot. ("Frenkel LLP's Reply"), Docket Entry No. 38; MidFirst's Mot. to Dismiss ("MidFirst's Mot."), Docket Entry No. 33; MidFirst's Mem. in Supp. of MidFirst's Mot. ("MidFirst's Mem."), appended to MidFirst's Mot., Docket Entry No. 33-1; MidFirst's Reply in Supp. of MidFirst's Mot. ("MidFirst's Reply"), Docket Entry No. 40; Pl.'s Opp'n to Frenkel LLP's Mot. and MidFirst's Mot. ("Pl.'s Opp'n"), Docket Entry No. 42.)

MidFirst [ ] claims to own" and "[p]ursuant to that retention, Frenkel [LLP] files and maintains actions in New York State courts seeking debt collection" for amounts owed on mortgage agreements.  (*Id.* ¶¶ 23, 27.)

### b.  Plaintiff's allegations

Plaintiff alleges Defendants "collectively engaged in a fraudulent scheme to purposefully miscalculate interest due and owing on residential mortgages in order to obtain vastly inflated payouts from court-ordered foreclosure sales."  (*Id.* ¶ 11.)  In support, Plaintiff contends that Defendants "submit[ed] deceptive documentation to New York Courts" that they expected would be "blindly approve[d]" and "prematurely utilize[d] the final monetary judgment award to the noteholder [MidFirst] awarded in a court's [j]udgment of [f]oreclosure and [s]ale . . . in calculating improper compound interest accrued on a mortgage loan before the [judgment of foreclosure and sale] was actually entered."  (*Id.* ¶¶ 12–13.)  By using the "already-determined [judgment of foreclosure and sale] amount as the basis for the calculation of interest . . . instead . . . of the mortgage principal," (*id.* ¶ 14), Defendants received excess money from the state court-ordered foreclosure sale of the Subject Property and "deprived Plaintiff . . . of [her] legal right to be awarded surplus monies."[3]  (*Id.* ¶¶ 11, 12.)

---

[3]  In the Amended Complaint, Plaintiff seeks certification of this action as a collective action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself, individually, and the following class:

> (a) all persons sued, or creditors of such persons or lienholders of liens against the property that was the subject of the [State Court Action] in question, in state-court lawsuits related to the collection of debt owed on a mortgage loan document secured by real property, (b) that were sold at auction, (c) in which Frenkel [LLP] was identified as counsel for the plaintiff in the complaint, (d) within six years of the date of the filing of this action.  Excluded from the [c]lass are the officers and directors of any Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest, at all relevant times.

### i. The foreclosure action

Plaintiff had a mortgage on the Subject Property with non-party Lehman Brothers Holdings, Inc. *(Id.* ¶¶ 52–53.)  On January 12, 2009, non-party Mortgage Electronic Registration Systems, Inc., as nominee for Lehman Brothers Holdings, Inc., assigned the mortgage to MidFirst. (*Id*. ¶ 53.)  On January 15, 2009, MidFirst commenced a foreclosure action under Index No. 1178/2009 against Plaintiff and a non-party in the Supreme Court of the State of New York, Queens County (the "State Court Action").[4]  (*Id*. ¶ 54.)  Frenkel LLP began representing MidFirst as the attorneys-of-record in December of 2011.  (*Id*. ¶ 55.)  In November of 2016, a court-appointed referee submitted a Referee's Report of Amount Due which set forth the amounts due and owing on the mortgage to be $301,305.71.  (*Id*. ¶ 57; *see id.* ¶ 29.)  The Referee's Report of Amount Due included an affidavit from MidFirst (the "MidFirst Affidavit"), which provided the figures the referee used to calculate the amount due to MidFirst, including

---

(Am. Compl. ¶ 69.)

[4] The Court takes judicial notice of the documents filed in the State Court Action.  *See Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, at *2 n.3 (2d Cir. May 7, 2025) (summary order) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) (internal quotation marks omitted))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998)) (same); *see also Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 754043, at *7 (S.D.N.Y. Mar. 10, 2025) ("[C]ourts may take judicial notice of public documents or matters of public record . . . including the contents of court dockets," but "a document filed in another court . . . [only] establish[es] the fact of such litigation and related filings" (first alteration in original) (citations omitted)); *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 201 n.3 (S.D.N.Y. 2022) ("'Courts may take judicial notice of public documents and matters of public record,' including 'document[s] filed in another court[,] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (alterations in original) (first quoting *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); and then quoting *Glob. Network Commc'ns*, 458 F.3d at 157)).

4

*inter alia* a principal balance of $150,591.90 and outstanding interest of $98,928.43. (*Id.* ¶ 57; MidFirst Aff. 7–8, annexed to MidFirst's Mot. in Ex. 2, Docket Entry No. 33-4.)

Plaintiff alleges MidFirst filed a notice of motion for judgment of foreclosure and sale in the State Court Action on July 26, 2016, with a proposed order drafted by Frenkel LLP that is "either identical or substantially similar" to the Judgment of Foreclosure and Sale subsequently entered by the Court.[5] (Am. Compl. ¶ 58.) The State Court entered the Judgment of Foreclosure and Sale for $301,305.71 due on the Subject Property on February 28, 2017 ("Judgment of Foreclosure and Sale"). (*Id.* ¶ 59.)

On May 31, 2019, the Subject Property was sold via public auction for $680,000 to non-parties. (*Id.* ¶ 60.) The Referee's Report of Sale for the State Court Action was filed on September 12, 2019 that utilized the final judgment amount awarded in the Judgment of Foreclosure and Sale, $301,305.71, to compute the interest owed to Defendants and awarded MidFirst a total of $463,387.08, including interest. (*Id.* ¶¶ 62–64, 68; Referee's Report of Sale 2.) Relevant figures from the Referee's Report of Sale are as follows: (1) $301,305.71, the "[a]mount due to Plaintiff as per Judgment [of Foreclosure and Sale]"; (2) $52,619.82, the

---

[5] MidFirst disputes Plaintiff's allegation that it submitted fraudulent filings on July 26, 2016 and August 30, 2019 in the State Court Action, (Am. Compl. ¶ 104(i)), because the "[State Court Action] docket reveals that no documents were filed on MidFirst's behalf on or around those dates." (MidFirst's Mem. 5 n.3; *see* J. of Foreclosure and Sale, annexed to Frenkel LLP's Mot. as Ex. B, Docket Entry No. 32-1.) The Judgment of Foreclosure and Sale states that MidFirst moved for an order confirming the Judgment of Foreclosure and Sale in the State Court Action on July 26, 2016, but the State Court Action docket and Judgment of Foreclosure and Sale do not include a draft proposed order drafted by Frenkel LLP, as Plaintiff contends. (*See* J. of Foreclosure and Sale.) There is also no filing on the State Court Action docket or in the parties' submissions demonstrating that MidFirst made any filings on August 30, 2019. (State Court Action Docket, annexed to MidFirst's Mot. as Ex. 4, Docket Entry No. 33-6; *see also* Referee's Report of Sale, annexed to Frenkel LLP's Mot. as Ex. C, Docket Entry No. 32-1; Referee's Oath, annexed to Frenkel LLP's Mot. as Ex. C, Docket Entry No. 32-1.) The Referee's Report of Sale and the Referee's Oath, submitted with the Referee's Report of Sale, are dated August 30, 2019, (Referee's Report of Sale; Referee's Oath annexed to Frenkel LLP's Mem. as Ex. C, Docket Entry No. 32-1), but there is no factual support that MidFirst or Frenkel LLP were involved in the Referee's Report of Sale, as Plaintiff contends, (Am. Compl. ¶ 14).

5

"[i]nterest on Judgment Amount from 4/30/15 through 2/28/17 at 9.5%"; and (3) $67,826.77, the "[i]nterest on Judgment Amount from 3/1/17 through 08/30/2019 at 9.0%." (Am. Compl. ¶ 63; Referee's Report of Sale 2.) The final judgment amount of $301,305.71 in the Referee's Report of Sale includes interest at the mortgage rate up until April 30, 2015, and it computes interest at the mortgage interest rate using the judgment amount as its basis instead of the mortgage principal. (Am. Compl. ¶¶ 63, 65.) Plaintiff alleges that Defendants submitted a proposed order with improper calculations that "prematurely utilize the final judgment amount to compute the pre-judgment interest accrued," (*id.* ¶ 66), *and* therefore awarded MidFirst a total of $463,387.08 instead of $440,536.73, Plaintiff's alleged correct total amount, for a surplus of $22,850.35.[6] (*Id.* ¶¶ 67–68.) The state court confirmed the Referee's Report of Sale on January 9, 2020 ("Confirmation Order"). (Order Confirming Referee's Report of Sale, annexed to MidFirst's Mot. as Ex. 6, Docket Entry No. 33-8.)

### ii.   FDCPA allegations

Plaintiff contends that Defendants violated the FDCPA "by making false and misleading representations, using deceptive means and engaging in unfair and abusive practices," including: (1) filing "fraudulent and misleading" motions and documents in the State Court Action against Plaintiff containing interest calculations that illegally inflated the money due and owed to Defendants; (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants; and (3) collecting money "incidental to the principal obligations under mortgage loan agreements without being expressly authorized by the original mortgage loan agreement to do so." (*Id.* ¶ 81.)

---

[6] Plaintiff alleges two different surplus interest amounts that MidFirst received: $22,850.35, (Am. Compl. ¶ 68), and $13,352.88, (*id.* ¶ 145; Pl.'s Opp'n 28).

### iii.    GBL § 349 allegations

To support her claim under GBL § 349, Plaintiff asserts the same facts as her FDCPA claim to support her claim under GBL § 349.  (*See id.* ¶¶ 81, 88.)  Plaintiff alleges that "Defendants' acts and omissions are directed at consumers," and are "deceptive, misleading and fraudulent" including the acts of (1) filing "fraudulent and misleading" motions and documents in the State Court Action containing interest calculations that illegally inflated the money due and owed to Defendants, and (2) filing "fraudulent, deceptive and misleading" motions and referee's reports of sale containing interest calculations that illegally inflated the money due and owed to Defendants.  (*Id.* ¶¶ 88–89.)

### iv.    The RICO allegations

Plaintiff first alleges that Defendants were a RICO enterprise, the purpose of which was to "secure judgments of foreclosure and sale through fraudulent means and to use those judgments to extract money," from Plaintiff and class members.  (Am. Compl. ¶¶ 97–100.)  Second, Plaintiff alleges that Defendants engaged in a pattern of racketeering activity to "defraud and obtain money or property by means of false or fraudulent pretenses and representations" by: (i) "[p]roducing and filing fraudulent motions for a judgment of foreclosure and sale;" (ii) "[p]roducing and filing fraudulent [r]eferee [r]eports of [s]ale;" (iii) "[u]sing fraudulent, deceptive and misleading [r]eferee [r]eports of [s]ale to obtain [j]udgments of [f]oreclosure and [s]ale against Plaintiff and [c]lass members under false pretenses;" and (iv) "[u]sing fraudulently obtained judgments of foreclosure and sale to steal surplus monies from Plaintiff and [c]lass members."  (*Id.* ¶ 103.)  Third, in furtherance of this goal, Plaintiff alleges that the Defendants filed false filings in the State Court Action on July 26, 2016 and August 30, 2019, "falsely claiming that MidFirst Bank is entitled to illegally computed compound interest."  (*Id.* ¶ 104.)  Plaintiff also alleges that Defendants have used these "deceptive court filings with every

[judgment of foreclosure and sale] that they have fraudulently obtained" to further the fraudulent scheme and take money and property from Plaintiff "by reasons of false pretenses and representations." (*Id.* ¶ 106.)  Fourth, Plaintiff alleges that Defendants engaged in racketeering activity by "us[ing] wires and the mail to receive the unlawfully obtained monies," constituting wire fraud as defined by 18 U.S.C. § 1343.  (*Id.* ¶ 107.)  Fifth, Plaintiff alleges that, as a result, she has been "deprived of due process and [ ] had foreclosure and [a] sale judgment[] entered against [her] which [has] been used to extract money from [her] by selling [her] [Subject] [P]roperty."  (*Id.* ¶ 115.)

### v.   Judiciary Law § 487 allegations

In support her claim under Judiciary Law § 487 against Frenkel LLP, Plaintiff asserts the same allegations as her FDCPA and GBL § 349 claims, but also alleges Frenkel LLP acted with the "intent to deceive consumers and multiple New York courts."  (*Id*. ¶ 92.)

### vi.   Negligence, gross negligence, and legal malpractice allegations

Plaintiff asserts negligence, gross negligence, and legal malpractice claims against Frenkel LLP based on the same underlying allegations.  In support of her negligence claim, Plaintiff alleges Frenkel LLP "instructs its attorneys and employees to calculate interest with the fraudulent method" and "use[s] proposed orders and referee reports of sale with a miscalculated judgment amount."  (*Id.* ¶¶ 130–31.)  In support of her gross negligence claim, Plaintiff alleges Frenkel LLP's "failure to follow the basic and necessary protocol for the calculations in the referee reports of sale manifested a reckless and intentional breach of its duty of care and a complete disregard for the rights of the Plaintiff."  (*Id.* ¶ 138.)  In support of her legal malpractice claim, Plaintiff alleges Frenkel LLP "negligently and recklessly filed fraudulent referee reports of sale on behalf of MidFirst."  (*Id.* ¶ 141.)

### vii.    Unjust enrichment, *prima facie* tort, and conversion allegations

Plaintiff asserts an unjust enrichment claim against MidFirst and conversion and *prima facie* tort claims against Defendants for her loss of surplus money.  First, Plaintiff asserts an unjust enrichment claim against MidFirst based on its receipt of $13,352.88 more than it was legally entitled "through Defendants['] fraudulent interest calculations."  (*Id.* ¶ 145.)  Second, Plaintiff asserts a *prima facie* tort claim against Defendants for "intentionally [seeking] to reduce and/or eliminate the surplus monies rightfully owed to Plaintiff."  (*Id.* ¶ 150.)  Third, Plaintiff asserts a conversion claim against Defendants for "intentionally, and without authority, assum[ing] or exercise[ing] control over the surplus monies from the foreclosure auction and sale of the Subject Property," thus "interfer[ing] with Plaintiff's possessory right and vested interest in the surplus funds from the sale."  (*Id.* ¶¶ 157–58.)

## II.    Discussion

### a.    Standard of review

A district court may dismiss an action for lack of subject–matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, N.Y.*, 98 F.4th 386, 391 (2d Cir. 2024) (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)); *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015)), *cert. denied*, 144 S. Ct. 1095 (2024); *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (quoting *Makarova*, 201 F.3d at 113).  Courts must "accept the complaint's material allegations as true, and . . . draw all reasonable inferences in the plaintiffs' favor," *Sunvestment*

9

*Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024) (quoting *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017)), but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, 73 F.4th 126, 136 (2d Cir. 2023) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) ("It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" (first quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); and then citing *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999))); *see Iacovo v. Magguilli*, No. 24-CV-4372, 2025 WL 1135471, at *3 (E.D.N.Y. Apr. 17, 2025) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." (quoting *Tandon*, 752 F.3d at 243)). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *AMTAX Holdings*, 136 F.4th at 37 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quoting *Makarova*, 201 F.3d at 113)).

### b. The Court has subject matter jurisdiction because this action is not barred by the *Rooker-Feldman* doctrine

Defendants move to dismiss the action for lack of subject matter jurisdiction and argue the action is barred by the *Rooker-Feldman* doctrine which precludes federal courts from reviewing state court judgments. (MidFirst's Mem. 7, 14–19; Frenkel LLP's Mem. 5–7.) *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States [d]istrict [c]ourt has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fid. Tr.*

10

*Co.*, 263 U.S. 413, 415–16 (1923).  For the reasons explained below, the Court has subject matter jurisdiction over Plaintiff's claims and denies Defendants' motion to dismiss based on this ground.

First, Defendants argue that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims because Plaintiff requests that the Court determine whether the state court wrongfully issued the Judgment of Foreclosure and Sale and miscalculated interest in the Confirmation Award, and Plaintiff's injuries, including damages, stem from the State Court Action.  (MidFirst's Mem. 15–16; Frenkel LLP's Mem. 6–7.)  Second, MidFirst argues that regardless of whether Plaintiff alleges the Judgment of Foreclosure and Sale or the Confirmation Order caused her injuries, Plaintiff's demand for damages requires the Court to "second guess [whether] the state court's determination that the interest calculations authorized in the [Judgment of Foreclosure and Sale] and contained in the Confirmation Order were lawful," and this is prohibited by *Rooker-Feldman*.  (MidFirst's Reply 3–4.)  Third, MidFirst argues that the *Rooker-Feldman* doctrine bars Plaintiff's fraud-based claims, including FDCPA claims, because they are "inextricably intertwined" with the validity of the judgment in the State Court Action and invites the Court to overturn the interest awarded in the State Court Action.  (MidFirst's Mem. 16–17 (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128–29 (2d Cir. 2002).)  Fourth, MidFirst contends it is immaterial that Plaintiff did not raise fraud claims in the State Court Action.  (*Id.* at 16.)  Fifth, Frenkel LLP argues that Plaintiff is "expressly asking this Court to review and effectively overturn the [J]udgment of [F]oreclosure and [S]ale," (Frenkel LLP's Reply 2), and ties her injuries to the Judgment of Foreclosure and Sale, but "'*any*' attack on the [J]udgment of [F]oreclosure [and Sale] is clearly barred by the *Rooker-Feldman* doctrine," (*id.* (quoting *Feinstein v. The Chase Manhattan Bank*, No. 06-CV-1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006))).

Plaintiff argues, first, that all of her claims are "wholly independent" of the Judgment of Foreclosure and Sale and do not seek to overturn it. (Pl.'s Opp'n 2.) In support, Plaintiff argues that she has not met the second prong of the *Rooker-Feldman* doctrine because there is no causal link between the Judgment of Foreclosure and Sale and Plaintiff's injury since Plaintiff's injury was "merely ratified by the [state] court" rather than caused by it. (*Id.* at 3.) Second, Plaintiff alleges the unlawfully computed interest occurred during the post-auction stage of the litigation with "little to no judicial oversight." (*Id.* at 3–4.) Third, Plaintiff contends that her injuries were caused by the "fraudulent calculations of interest in the final stages of foreclosure proceedings — not the underlying [Judgment of Foreclosure and Sale]" that were then "ratified by the court without any contemporaneous judicial review." (*Id.* at 4.) In support of her arguments, Plaintiff contends that the Court can consider her claims without assessing the validity of the Judgment of Foreclosure and Sale, and damages for fraud are not barred by *Rooker-Feldman*. (*Id.* at 6–8.) In addition, Plaintiff argues that the relief sought would not invalidate the Judgment of Foreclosure and Sale, nor does she "seek a judgment overturning, invalidating, or vacating the underlying state court judgments." (*Id.* at 4–5.)

In *Rooker*, 263 U.S. at 415–16, and *Feldman*, 460 U.S. at 482–84, the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state court decision. *Feldman*, 460 U.S. at 482–84; *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors."); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*,

12

773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 283–84)).  "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see also Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" (alteration in original) (quoting *Exxon Mobil Corp.*, 544 U.S. at 283)).

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'"  *Vossbrinck*, 773 F.3d at 426 (alterations in original) (quoting *Hoblock*, 422 F.3d at 85); *see also Binder v. Cap. One Bank, N.A.*, No. 25-1201, 2025 WL 3751871, at *1 (2d Cir. Dec. 29, 2025) (summary order) (affirming *Rooker-Feldman* doctrine barred appellant's claims because it required the court to "review and reject[]" the state court's determination (quoting *Vossbrinck*, 773 F.3d at 426)); *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (affirming that review was barred pursuant to the *Rooker-Feldman* doctrine because "correcting [the] loan balance as found by the state court" in the foreclosure judgment would invite rejection of the state court's judgment); *Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 609 (2d Cir. 2020) (outlining the *Rooker-Feldman* test); *Ahchouch v. Lakeview Loan Servicing, LLC*, No. 25-CV-93, 2025 WL 70136, at *2 (S.D.N.Y. Jan. 10, 2025) ("[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the

13

*Rooker-Feldman* doctrine." (alteration in original) (quoting *Brooks v. Aiden 0821 Cap. LLC*, No. 19-CV-6823, 2020 WL 4614323, at *3 (E.D.N.Y. July 22, 2020))); *In re Ditech Holding Corp.*, No. 19-BR-10412, 2022 WL 1750997, at *12 (Bankr. S.D.N.Y. May 28, 2022) (dismissing claims because "the [c]ourt would be required to look behind the judgment and determine whether the . . . [s]tate [c]ourt [f]oreclosure [j]udgment is the product of alleged fraud"); *In re Allard*, No. 18-BR-14092, 2019 WL 4593854, at *3 n.2 (Bankr. S.D.N.Y. Sep. 20, 2019) (noting that a debtor "tried unsuccessfully several times to get th[e] [c]ourt . . . to modify the state court foreclosure judgment, reducing the interest award . . . [b]ut the *Rooker-Feldman* doctrine does not permit th[e] [c]ourt to do so"); *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (dismissing adversary complaint under the *Rooker-Feldman* doctrine seeking to reverse the state court foreclosure judgment).

"Although 'all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive.'" *Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). The Second Circuit has acknowledged that plaintiffs may "purport to complain of injury by individuals in reality complain of injury by state-court judgments," and therefore the Circuit "developed the following formula to help guide our inquiry: 'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 88).

Plaintiff's claims are not barred by the *Rooker-Feldman* doctrine because (1) Plaintiff's injuries were not caused by the state court judgment, and (2) Plaintiff's requests for relief do not

14

seek to set aside the Judgment of Foreclosure and Sale or the Confirmation Order, and therefore, the second and third prongs of *Rooker-Feldman* are not met. *See Dorce*, 2 F.4th at 104 (finding plaintiffs' claims were not barred by *Rooker-Feldman* because plaintiffs only sought damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment).

As an initial matter, Plaintiff satisfies the first and fourth *Rooker-Feldman* prongs: the federal-court plaintiff lost in the state court, and the state court must rendered judgment with the Judgment of Foreclosure and Sale on February 28, 2017 before this action was brought in federal court.[7] First, Plaintiff lost in the State Court Action which resulted in the Judgment of Foreclosure and Sale and the Confirmation Order. *See id.* at 103 (finding the first prong satisfied by a "property owner who loses his or her interest in the property through an *in rem* foreclosure proceeding in state court"). Second, Plaintiff filed this action on April 3, 2025, approximately eight years after the Judgment of Foreclosure and Sale and five years after the Confirmation Order were filed and entered in the State Court Action. *See id.* at 102 (finding state court foreclosure judgments rendered prior to commencement of the federal action satisfied the fourth prong).

However, regarding the second factor, Plaintiff's injuries were not caused by the state court judgment, but instead, Defendants' alleged fraud, and as to the third factor, the asserted claims do not invite federal review and rejection of the Judgment of Foreclosure and Sale and the Confirmation Order. Accordingly, Plaintiff's requests for relief do not seek to set aside the Judgment of Foreclosure and Sale and Confirmation Order, and as a result, the second and third *Rooker-Feldman* prongs are not satisfied. *See id.* at 104 (permitting claims for compensatory

---

[7] Plaintiff does not dispute that the first and fourth prongs are met. (*See* Pl.'s Opp'n 3–8 (discussing only the second and third prongs).)

15

damages for injury caused by the defendant's misconduct in procuring a state court judgment); *Lindow v. Argent Mortg. Co.*, No. 23-CV-8860, 2024 WL 4665181, at *6 (E.D.N.Y. Nov. 4, 2024) ("[T]he second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." (quoting *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sep. 28, 2021))).

Each of Plaintiff's claims request damages without inviting the Court to overturn the Judgment of Foreclosure and Sale and Confirmation Order. *See Dorce*, 2 F.4th at 104 ("[The Second Circuit] has concluded that *Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct 'that defendants pursued in obtaining' state court judgments." (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015))); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."); *Sykes*, 780 F.3d at 94–95 (noting that "claims . . . speak[ing] not to the propriety of the state court judgments, but to the fraudulent course of conduct that [the] defendants pursued in obtaining such judgments" are not barred by *Rooker-Feldman*); *see also Vossbrinck*, 773 F.3d at 427–28 (finding the plaintiff's request for the court to grant him title to his property was barred by *Rooker-Feldman* but the plaintiff's requests for damages suffered from the defendants alleged fraud was not barred by *Rooker-Feldman* because the reviewing federal court was not required to review the state court judgment).

Plaintiff alleges Defendants knowingly presented deceptive and fraudulent filings with inflated interest amounts in the State Court Action, (Am. Compl. ¶¶ 81, 88, 92, 103–04), and the

16

state court "merely ratified" Defendants' conduct, (Pl.'s Opp'n 3).  Taken together, Plaintiff's allegations "can be liberally construed as asserting fraud claims that are not barred by *Rooker-Feldman* — because they seek damages from Defendants for injuries [plaintiff] suffered from their alleged fraud."  *See Vossbrinck*, 773 F.3d at 427; *Lindow*, 2024 WL 4665181, at *6 ("Liberally construed, the plaintiff's complaint reaches beyond the attack on the state court judgment and may be read as a claim for damages stemming from the defendants' allegedly fraudulent conduct in connection with the foreclosure proceeding.  Specifically, the plaintiff claims that the defendants 'knowingly presented false information' in order to secure the foreclosure judgment.").  Moreover, Plaintiff does not seek injunctive or declaratory relief concerning Defendants' interest in the Subject Property, only damages, and therefore, *Rooker-Feldman* does not bar Plaintiff's claims.  *Cf. Barlow v. Nationstar Mortg. LLC*, No. 21-1483, 2022 WL 950949, at *2 (2d Cir. Mar. 30, 2022) (summary order) (finding that the plaintiff's requests for a temporary and permanent injunction against foreclosure "activity" and an "accounting" of his loan payments were barred by *Rooker-Feldman* because the plaintiff's alleged injuries of extreme emotional distress, slander and lost equity were based on the state court foreclosure judgment and the amount the state court determined he owed on his mortgage); *Vossbrinck*, 773 F.3d at 427 (finding *Rooker-Feldman* barred the plaintiff's requests for title and tender of his property); *Lindow*, 2024 WL 4665181, at *5 (concluding the court lacked jurisdiction over each claim for injunctive or declaratory relief concerning the plaintiff's and the defendants' interest in the property).

> **c.   All of Plaintiff's claims are time-barred and equitable tolling does not apply**

The Court considers the parties' arguments regarding statutes of limitations and equitable tolling and finds that all of Plaintiff's claims are time-barred, and equitable tolling is inapplicable.

17

### i.    The statute of limitations for each claim has expired

Defendants move to dismiss with prejudice all of Plaintiff's claims on the grounds that the statutes of limitations have expired.  (MidFirst's Mem. 7–10; MidFirst's Reply 1–3; Frenkel LLP's Mem. 9–13.)  In support, Defendants allege the Referee's Report of Sale from September of 2019 "clearly and unambiguously disclosed," (MidFirst's Mem. 9), the interest calculations, and therefore, Plaintiff's claims accrued in 2019 when she was injured and when Plaintiff was put on notice of the alleged "fraudulent scheme," (Frenkel LLP's Mem. 12).

Plaintiff acknowledges that the statutes of limitations have expired on most of her claims but argues that her Judiciary Law § 487 and fraud[8] claims are timely.  (Pl.'s Opp'n 13.)  Plaintiff

---

[8]  The Court notes that Plaintiff did not bring a claim for common law fraud in her Amended Complaint, but instead alleges fraudulent and deceptive conduct as the basis for her claims, and therefore the Court does not address a specific cause of action for common law fraud.  (*See generally* Am. Compl.)

In addition, Plaintiff does not cite to any cases or statutes to support her argument that her claims pursuant to Judiciary Law § 487 and "fraud" are not time-barred.  (Pl.'s Opp'n 13.)  Under New York's statute of limitations, an action based upon fraud must be brought within six years from the date of the fraud or two years from the date that the plaintiff discovered or could have reasonably discovered the fraud, whichever is greater.  N.Y. C.P.L.R. § 213(8); *Meyer v. Seidel*, 89 F.4th 117, 131 (2d Cir. 2023) (quoting *id.*).  Courts have interpreted the six-year statute of limitations to apply to both claims for common law fraud and conspiracy to commit fraud, *Bilalov v. Gref*, No. 20-CV-9153, 2022 WL 4225968, at *10 (S.D.N.Y. Sep. 13, 2022), and for "fraud-based action[s]," *Lindow v. Argent Mortg. Co.*, No. 23-CV-8860, 2024 WL 4665181, at *6 n.5 (E.D.N.Y. Nov. 4, 2024) (quoting *Sargiss v. Magarelli*, 881 N.Y.S.2d 651, 654 (2009)), or "claims sounding in fraud" such as constructive trust, *Maitland v. Fishbein*, No. 15-CV-5845, 2019 WL 1338591, at *7 (E.D.N.Y. Mar. 7, 2019), *report and recommendation adopted*, 2019 WL 1333262 (E.D.N.Y. Mar. 22, 2019).  Since Plaintiff does not plead a cause of action for fraud and other statutes of limitations govern her claims, as discussed in this Section, the six-year statute of limitations under N.Y. C.P.L.R. § 213(8) does not apply to her claims.

Even accepting Plaintiff's arguments regarding Defendants' fraud-based conduct, including "fraudulent interest calculations," (Am. Compl. ¶ 145), and a "fraudulent scheme," (*id.* ¶ 161), Plaintiff only alleges fraud-based conduct in a conclusory manner.  Allegations of fraud must comply with Rule 9(b) of the Federal Rules of Civil Procedure's heightened pleading requirements.  *Miller v. United States ex rel. Miller*, 110 F.4th 533, 543 (2d Cir. 2024) ("Rule 9(b) provides, in relevant part: 'In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" (quoting Fed. R. Civ. P. 9(b))); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting same).  As discussed *infra* in Section II.c.ii, Plaintiff provides no factual allegations of Defendants' alleged fraudulent

18

admits that "every cause of action began accruing" on September 12, 2019, the filing date for the Referee's Report of Sale. (*Id.*)

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019) ("[A]n FDCPA claim must be brought 'within one year from the date on which the violation occurs.'" (quoting *id.*)). "An FDCPA violation occurs 'when an individual is injured by the alleged unlawful conduct.'" *Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-202, 2024 WL 2207061, at *1 (2d Cir. May 16, 2024) (summary order) (quoting *Benzemann*, 924 F.3d at 83).

A GBL § 349 claim must be brought within three years from the date on which the plaintiff was first injured by the allegedly deceptive act or practice. *In re Columbia Coll. Rankings Action*, No. 22-CV-5945, 2024 WL 1312511, at *10 (S.D.N.Y. Mar. 26, 2024) (stating GBL § 349 claims "must be commenced within three years of the date of accrual, which occurs when the plaintiff is injured by the deceptive act or practice that violated the statute" (quoting *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019))); *see also Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 149 n.8 (S.D.N.Y. 2014) (holding the three-year statute of limitations barred the plaintiffs' GBL § 349 claims when the plaintiffs alleged fraud-based conduct (first citing *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000); and then citing N.Y. C.P.L.R. § 214(2))).

A civil RICO claim must be brought within four years of accrual, which occurs "when the plaintiff discovers or should have discovered the RICO injury." *Cohen v. S.A.C. Trading*

---

scheme of filing false and deceptive documents and instead relies on pure conjecture. "Bare-bones allegations do not satisfy Rule 9(b)." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

*Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (first quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); and then citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Claims of negligence and gross negligence must be brought within three years from the date of accrual, which is the date of the injury. *See Shukla v. Meta Platforms Inc.*, No. 23-CV-10150, 2024 WL 4108563, at *13 (S.D.N.Y. July 17, 2024) (finding the plaintiff's negligence claim was time-barred as construed under either N.Y. C.P.L.R. § 214(4) for injury to property or N.Y. C.P.L.R. § 214(5) for personal injury because both had three-year statutes of limitations (first quoting *Vaccaro v. Bank of Am., N.A.*, No. 13-CV-2484, 2016 WL 4926201, at *6 n.12 (S.D.N.Y. Sep. 15, 2016); and then citing N.Y. C.P.L.R. § 214)), *report and recommendation adopted*, 2024 WL 3634796 (S.D.N.Y. Aug. 2, 2024), *reconsideration denied sub nom.*, *Shukla v. Deloitte Consulting LLP*, 2024 WL 5162062 (S.D.N.Y. Oct. 28, 2024), *appeal dismissed*, No. 24-3126 (2d Cir. Jan. 14, 2025); *Spinnato v. Unity of Omaha Life Ins.*, 322 F. Supp. 3d 377, 391–92 (E.D.N.Y. 2018) (applying three-year statute of limitations for negligence and gross negligence claims).

A cause of action for legal malpractice must be brought within three years from the time of accrual. *Campbell v. L. Off. of Solomon Rosengarten*, 238 N.Y.S.3d 679, 680 (App. Div. 2025) (citing N.Y. C.P.L.R. §§ 203(a), 214(6)). An action to recover damages for attorney deceit under Judiciary Law § 487 may be subject to a six-year statute of limitations. *Catsiapis v. Pardalis & Nohavicka, LLP*, 194 N.Y.S.3d 522, 523 (App. Div. 2023) (first citing N.Y. C.P.L.R. § 213(1) (providing a six-year statute of limitations for "an action for which no limitation is specifically prescribed by law"); and then citing *Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 15 (2014)); *see Melcher*, 23 N.Y.3d at 15 (finding claims for attorney deceit are subject to the six-year statute of limitations under N.Y. C.P.L.R. § 213(1)). However, "[t]he statute of limitations for a cause of action alleging legal malpractice, and a cause of action alleging a

20

violation of Judiciary Law § 487 arising out of the same transactions as the legal malpractice cause of action, is three years." *Pergament v. Gov't Emps. Ins.*, --- N.Y.S.3d ---, ---, 2026 WL 157439, at *2 (App. Div. Jan. 21, 2026) (first quoting *Fraumeni v. L. Firm of Jonathan D'Agostino, P.C.*, 187 N.Y.S.3d 99, 101 (App. Div. 2023); then citing N.Y. C.P.L.R. § 214(6); and then citing *Farage v. Ehrenberg*, 996 N.Y.S.2d 646 (App. Div. 2014)); *see Catsiapis*, 194 N.Y.S.3d at 523 (dismissing Judiciary Law § 487 as barred by three-year statute of limitations because the claim was "premised on the same facts as the legal malpractice cause of action and [did] not allege distinct damages") (citations omitted)); *Farage*, 996 N.Y.S.2d at 651–52, 655 (distinguishing *Melcher*, 23 N.Y.3d 10, because it did not involve a claim of legal malpractice and finding N.Y. § C.P.L.R. 214(6) governed any claims of legal malpractice, including Judiciary Law § 487, with a three-year statute of limitations); *see also* N.Y. C.P.L.R. § 214(6) (providing a three-year statute of limitations to recover damages for "malpractice, other than medical, dental or podiatric malpractice").

The statute of limitations for claims of unjust enrichment vary depending on the nature of the claim and the relief sought: unjust enrichment claims seeking monetary damages have a three-year statute of limitations.[9] *St. Martinus Univ., N.V. v. SMU LLC*, No. 21-CV-1888, 2023

---

[9] Unjust enrichment is not explicitly named in the New York statutes of limitations, and courts in the Second Circuit have cited to different New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") statutes for unjust enrichment claims based on the underlying theory, accompanying causes of action, and type of relief sought. *See Nwoye v. Obama*, No. 22-CV-1791, 2023 WL 4631712, at *14 (S.D.N.Y. July 20, 2023) (discussing six-year statute of limitations period for unjust enrichment claim under N.Y. C.P.L.R. § 213(2) for breach of contract claims (citing *Seidenfeld v. Zaltz*, 80 N.Y.S.3d 311, 311 (App. Div. 2018))), *report and recommendation adopted*, 2023 WL 5164156 (S.D.N.Y. Aug. 11, 2023), *aff'd*, No. 23-1178, 2024 WL 911753 (2d Cir. Mar. 4, 2024) (summary order); *see also Oppedisano v. Zur*, No. 24-2955, 2025 WL 2682227, at *2 (2d Cir. Sep. 19, 2025) (summary order) (applying catchall six-year limitations period in N.Y. C.P.L.R. § 213(1) for actions that do not otherwise have a specific limitations period proscribed by statute); *Yeend v. Akima Glob. Servs., LLC*, No. 20-CV-1281, 2025 WL 959968, at *18 (N.D.N.Y. Mar. 31, 2025) ("Courts within the Second Circuit apply a three-year or six-year statute of limitations to unjust enrichment claims depending on the

WL 2969284, at *12 (E.D.N.Y. Mar. 9, 2023); *Bilalov v. Gref*, No. 20-CV-9153, 2022 WL 4225968, at *10 (S.D.N.Y. Sep. 13, 2022) (applying three-year statute of limitations to unjust enrichment claim for "wrongful taking of [ ] shares" and applying six-year statute of limitations to claims for fraud and conspiracy to commit fraud for the same underlying conduct); *Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012) (explaining unjust enrichment claims seeking monetary damages are governed by the three-year statute of limitations under N.Y. C.P.L.R. § 214(3)), *aff'd*, 541 F. App'x 71 (2d Cir. 2013); *but see St. Martinus Univ.*, 2023 WL 2969284, at *12 (describing a split among the intermediate New York appellate courts under what circumstances to apply the three-year or six-year statute of limitations period to an unjust enrichment claim (citing *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020))).

Claims for conversion must be brought within three years from the occurrence of the conversion or the unjust act. *Su v. Hwang*, No. 24-653, 2025 WL 1983182, at *4 (2d Cir. July 17, 2025) (summary order) (citing N.Y. C.P.L.R. § 214(3)); *Bilalov*, 2022 WL 4225968, at *10 (first citing N.Y. C.P.L.R. § 214(3); and then citing *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 3240428, at *11 (S.D.N.Y. Aug. 7, 2012)).

A cause of action for *prima facie* tort must be brought within three years from the date of injury if the plaintiff seeks damages for economic loss. *Watkins v. Town of Webster*, 592 F.

---

substantive remedy sought by the plaintiff. If monetary relief is sought, a three-year statute of limitations applies. If an equitable remedy is sought, a six-year statute of limitations applies." (citing *Bascuñan v. Elsaca*, No. 15-CV-2009, 2021 WL 3540315, at *6, 6 n.5 (S.D.N.Y. Aug. 11, 2021))), *appeal docketed*, No. 25-2209 (2d Cir. Sep. 15, 2025); *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 65 (S.D.N.Y. 2020) (discussing split among New York's intermediate appellate courts with the Second Department applying a three-year statute of limitations for unjust enrichment claims under N.Y. C.P.L.R. § 214(3) when a plaintiff seeks monetary relief and a six-year limitations period when a plaintiff seeks equitable relief under N.Y. C.P.L.R. §§ 213(1)–(2), and the First Department emphasizing the "nature of the claim" and applying a six-year limitations period when a claim for unjust enrichment rests on facts that also support another claim governed by a six-year statute of limitations, even when the plaintiff seeks damages).

Supp. 3d 96, 129–30 (W.D.N.Y. 2022) (first citing *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 75–76 (S.D.N.Y. 1995); and then citing N.Y. C.P.L.R. § 214).

At the latest, Plaintiff's alleged injury stems from the miscalculations in the Referee's Report of Sale for the State Court Action, which was filed on September 12, 2019. Therefore, Plaintiff's claims began accruing on that date, which is more than five years before Plaintiff commenced this action. Plaintiff incorrectly alleges that her Judiciary Law § 487 is timely based on a six-year statute of limitations. (*See* Pl.'s Opp'n 13.) However, because she pleads the same facts as her legal malpractice claim and does not allege distinct damages, the Judiciary Law § 487 claim is subject to a three-year statute of limitations. *See Catsiapis*, 194 N.Y.S.3d at 523 (barred plaintiff's Judiciary Law § 487 claim because it pled the same facts as the legal malpractice claim and did not allege distinct damages). In addition, Plaintiff's claim for unjust enrichment against MidFirst seeks $5,000,000 in monetary damages for the overcompensation of MidFirst from the alleged interest miscalculation. (Am. Compl. ¶ 148.) Because the relief sought is monetary damages, and not equitable relief, the three-year statute of limitations applies. *See St. Martinus Univ.*, 2023 WL 2969284, at *12 (applying three-year statute of limitations for unjust enrichment claim seeking monetary damages). The longest statute of limitations for any of Plaintiff's claims is four years for the civil RICO claim, and therefore, all of Plaintiff's claims are time-barred.

### ii.    Equitable tolling does not apply to Plaintiff's claims

Plaintiff alleges the statutes of limitations on her claims should be tolled pursuant to the discovery rule, (Am. Compl. ¶¶ 161–63), and equitable tolling and fraudulent concealment, (*id.* ¶¶ 164–66).[10]  (Pl.'s Opp'n 14–17.)  First, Plaintiff contends the discovery rule applies to all

---

[10]  In the Amended Complaint, Plaintiff generally argues for tolling the statutes of limitations on her causes of action and pleads "discovery rule tolling" and "equitable estoppel

(fraudulent concealment tolling)." (Am. Compl. ¶¶ 161–66.)  In her Opposition, Plaintiff only discusses fraudulent concealment and equitable tolling.  (Pl.'s Opp'n 14–17.)  In its motion papers, MidFirst uses equitable tolling to refer to both the discovery rule and fraudulent concealment tolling.  (*See* MidFirst's Mem. 10 n.5 (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014)).)  Frenkel LLP also uses the equitable tolling and discovery rule doctrines interchangeably.  (*See, e.g.*, Frenkel LLP's Mem. 12 (discussing discovery rule but citing in support a case based on fraudulent concealment).)

The Second Circuit has stated that the terminology in this area is not always used with precision.  *See Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *3 (2d Cir. May 16, 2025) (summary order) ("New York courts and the courts of this Circuit variously use the terms 'fraudulent concealment,' 'equitable tolling' and 'equitable estoppel,' not always with clear delineation." (quoting *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022))); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) ("The distinction between equitable tolling and the diligence-discovery rule has not always been clear in our caselaw."); *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002) ("The initial difficulty encountered in trying to compare accrual, governed by federal law, with tolling, governed by state law, is that the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges.").  In *Ellul*, the Second Circuit clarified that "the distinction is that the diligence-discovery rule *delays* the date of accrual where the plaintiff 'is blamelessly ignorant of the existence or cause of his injury,' while the doctrine of equitable tolling applies *after* the claim has already accrued, suspending the statute of limitations 'to prevent unfairness to a diligent plaintiff.'"  *Ellul*, 774 F.3d at 801 (first quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982); and then quoting *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999)).  Fraudulent concealment often incorporates a discovery inquiry into the tolling analysis.  *See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025) (describing fraudulent concealment as "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." (quoting *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988))), *cert. denied*, --- S. Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (a plaintiff must show "(1) the defendant wrongfully concealed material facts relating to [the] defendant's wrongdoing; (2) the concealment prevented [the] plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) [the] plaintiff exercised due diligence in pursuing the discovery of the claim during the period [the] plaintiff seeks to have tolled." (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))).

Although Plaintiff pleads discovery rule tolling, Plaintiff does not provide any facts or argument to support delaying the date of accrual.  In fact, Plaintiff admits that her "claims under every cause of action began accruing the date the [Referee's] Report of Sale was filed on September 12, 2019."  (Pl.'s Opp'n 13.)  Plaintiff's theory in support of tolling is therefore based on when a reasonably diligent plaintiff would have been aware of the alleged misconduct, applying tolling after the date of accrual and "suspending the statute of limitations to prevent unfairness to a diligent plaintiff."  *See Ellul*, 774 F.3d at 801 (internal citation and quotation marks omitted).  Accordingly, the Court analyzes Plaintiff's arguments under the fraudulent concealment and equitable tolling doctrines without discussing the discovery rule doctrine.

24

claims because she could not have discovered the fraudulent scheme through reasonable diligence, and she did not know the essential elements of her claims until speaking with an attorney in 2024.[11]  (Am. Compl. ¶¶ 161–63.)  Second, Plaintiff contends that equitable tolling suspends the applicable statutes of limitations for all claims up until the commencement of this action because Defendants "affirmatively concealed from Plaintiff and the other members of the [c]lass the[ir] fraudulent scheme." (*Id.* ¶¶ 164–66; Pl.'s Opp'n 14–17.)  In support, Plaintiff states that Defendants' improper interest calculation "is not visible to the plaintiff-borrower, the court, nor subordinate lienholders . . . until after the foreclosure auction has occurred and Defendants file the Report of Sale."[12]  (Pl.'s Opp'n 15.)  Plaintiff argues that Defendants "exercise unilateral control" over the Referee's Report of Sale and "there is no contemporaneous judicial or adversarial review of the interest calculations before they are used for determining the existence and distribution of surplus proceeds."  (*Id.*)  Therefore, the "delayed disclosure [ ] functions as a post-hoc concealment tool," and Plaintiff is "left unaware that Defendants engineered an inflated judgment" until after the sale of the Subject Property, and "the surplus [ ] has already been suppressed."  (*Id.*)  Third, Plaintiff argues that courts in the Southern District of New York recognize equitable tolling of FDCPA claims when defendant-companies and

---

[11]  Although Plaintiff alleges in the Amended Complaint that she did not know the essential elements of her claims until speaking with an attorney in 2024, in her Opposition, Plaintiff alleges a different discovery date of March of 2025.  (Pl.'s Opp'n 16.)  Because the Court finds equitable tolling does not apply, Plaintiff's conflicting pleading is immaterial to the Court's analysis.

[12]  In the Amended Complaint, Plaintiff states that "the court-appointed referee issues a Referee Report of Sale" and calls the report the "Referee's Report of Sale." (Am. Compl. ¶ 29(ix).)  However, in her Opposition, Plaintiff alleges Defendants, and in particular, Frenkel LLP, filed the "Report of Sale," (Pl.'s Opp'n 15–16), but then calls it the "Referee's Report of Sale," "Bhoge Report of Sale" or "Report of Sale," (*see id.* at 3–4, 13).  As discussed *supra* in n.5, other than Plaintiff's speculation, she has not presented any factual allegations to support or show any involvement by MidFirst or Frenkel LLP in the Referee's Report of Sale.  (*See* State Court Action Docket; Referee's Report of Sale.)

25

attorneys file false affidavits because the affidavits are "inherently self-concealing." (*Id.* at 15–16.)  Therefore, Plaintiff contends the MidFirst Affidavit and the court-appointed referee's affidavit attached to the Referee's Report of Sale provided "the guise of legitimacy" which Plaintiff had "no reason to question" "until Plaintiff[] first discovered it when consulting with her attorney." (*Id.* at 16.)

Defendants argue the doctrine of equitable tolling, including both the discovery rule and fraudulent concealment, does not apply to any of Plaintiff's claims because it is "only appropriate in rare and exceptional circumstances" not present in this case.  (MidFirst's Mem. 10–14 (quoting *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015)); Frenkel LLP's Mem. 11–13 (quoting same).)  First, Defendants argue equitable tolling cannot be premised on "ignorance of the right to bring a claim." (MidFirst's Mem. 11–12 (quoting *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017)); *see* Frenkel LLP's Mem. 12.)  Second, Defendants argue Plaintiff's allegations in the Amended Complaint "plainly contradict[]" her alleged ignorance of her claims because she alleges Defendants "revealed [their] fraudulent scheme" in 2019 through the publicly filed State Court Action documents and service of Plaintiff, and thus "nothing was concealed" and neither the discovery rule nor the fraudulent concealment theory apply.  (MidFirst's Mem. 11–13; MidFirst's Reply 2; Frenkel LLP's Mem. 12; Frenkel LLP's Reply 5–6.)  Frenkel LLP also argues that Plaintiff's "conflicting timeline — claiming discoverability in 2019 yet asserting actual discovery in 2024 — renders her argument[s] [for equitable tolling or fraudulent concealment] untenable . . . ." (Frenkel LLP's Reply 5.)  Third, Defendants argue that the discovery rule does not apply because Plaintiff has not pled facts demonstrating due diligence, especially considering that Plaintiff was represented by counsel in the State Court Action.  (MidFirst's Mem. 11–13; MidFirst's Reply 2–3; Frenkel LLP's Mem. 12–13.)  Fourth, Defendants further argue that the fraudulent concealment theory

26

cannot apply because Plaintiff fails to allege her claims with the requisite particularly and only makes "vague and generalized accusations that are untethered from any events that occurred in the [State Court Action]," (MidFirst's Mem. 12–13).  (*Id.*; Frenkel LLP's Mem. 12.)  Fifth, MidFirst argues the continuing violation doctrine does not apply based on Plaintiff's "single conclusory statement" without any dates or details that Defendants continue to use improper interest calculation methods in unnamed New York State court cases.  (MidFirst's Mem. 13–14.) MidFirst contends that Plaintiff is attempting to "hitch[] her wagon" to more recent, unspecified conduct of putative class members, but such pleading cannot survive a motion to dismiss.  (*Id.* at 14.)  In addition, MidFirst argues Plaintiff waived her argument regarding the continuing violation theory because Plaintiff did not dispute MidFirst's arguments, and therefore Plaintiff's claims against MidFirst under the FDCPA, GBL § 349, RICO, unjust enrichment, *prima facie* tort, and conversion are expired.  (MidFirst's Reply 3.)  Likewise, Frenkel LLP argues that Plaintiff fails to substantively address the merits of her arguments regarding the statutes of limitations for the claims brought under the FDCPA, GBL § 349, legal malpractice, gross negligence, negligence, RICO, *prima facie* tort, and conversion, and therefore those claims are abandoned.  (Frenkel LLP's Reply 5.)

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998); *see also Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))).  For equitable tolling to apply, a litigant must demonstrate "[1] that some extraordinary circumstance stood in her way and [2] that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (internal quotation marks omitted) (quoting *Doe*, 76 F.4th at 71), *cert. denied*, --- S.

Ct. ---, 2026 WL 79895 (Jan. 12, 2026); *Watson*, 865 F.3d at 132 (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . that some extraordinary circumstance stood in [her] way and . . . that [she] has been pursuing [her] rights diligently." (alterations in original) (internal quotation marks and citation omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))); *Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting the party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting same).

Courts will equitably toll statutes of limitations for fraudulent concealment if: "(1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean*, 129 F.4th at 142 (citing *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Fromageot v. Britt*,

28

No. 21-CV-1165, 2025 WL 3470473, at *8 (D. Conn. Dec. 3, 2025) (quoting *id.*), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026); *see Koch*, 699 F.3d at 157 (a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." (quoting *Corcoran*, 202 F.3d at 543)). "A plaintiff can prove concealment by showing 'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing.'" *Saint-Jean*, 129 F.4th at 143 (quoting *Hendrickson Bros.*, 840 F.2d at 1083); *see SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting same), *appeal dismissed*, No. 24-874, 2024 WL 4491699 (2d Cir. Aug. 28, 2024). Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or fraudulent concealment "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-4927, 2024 WL 3675855, at *15 (E.D.N.Y. Aug. 6, 2024) ("A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." (quoting *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009))), *aff'd*, No. 24-2363, 2025 WL 2779015 (2d Cir. Sep. 30, 2025) (summary order). "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)). The "[Second] Circuit has explicitly clarified that 'fraudulent concealment is not essential to equitable tolling,'" meaning, the application of the doctrine of equitable tolling is not limited to

causes of fraudulent concealment.  *Saint-Jean*, 129 F.4th at 143 (quoting *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)).

Plaintiff fails to show the doctrine of fraudulent concealment tolling should apply to her claims because she has not pled facts demonstrating that (1) Defendants concealed anything fraudulent or that Defendants' conduct was self-concealing, (2) any alleged concealment prevented Plaintiff's discovery of the claim within the limitations period, or (3) Plaintiff exercised due diligence.  First, Plaintiff alleges "Defendants affirmatively concealed from Plaintiff and the other members of the [c]lass the[ir] fraudulent scheme," (Am Compl. ¶ 164), but then concedes that Defendants "revealed," (*id.* ¶ 64), their "fraudulent scheme to inflate interest calculations in foreclosure judgments," (Pl.'s Opp'n 15), in the Referee's Report of Sale filed on September 12, 2019, and the scheme had also "become[] discoverable," (Pl.'s Opp'n 15), after the foreclosure auction on May 31, 2019.  (Am. Compl. ¶¶ 60, 64, 164; Pl.'s Opp'n 15.)  Plaintiff's only allegation of fraud in the Amended Complaint is the miscalculated interest rate that Plaintiff admits was discoverable in the Referee's Report of Sale.  (*See* Am. Compl. ¶¶ 62–63.)  Thus, the miscalculated interest, which is the basis of Plaintiff's causes of action, was not affirmatively concealed.  *See Saint-Jean*, 129 F.4th at 144 (finding affirmative concealment when the defendant-mortgage company rushed the plaintiffs to sign documents that excluded the default interest rate and dissuaded the plaintiffs from bringing counsel at closing).

Nor do the MidFirst Affidavit and the referee's affidavit make Defendants' alleged conduct inherently self-concealing, as Plaintiff contends.  The miscalculations that Plaintiff alleges were concealed in the affidavits were also provided in the Referee's Report of Sale.  Plaintiff cites to *Toohey v. Portfolio Recovery Associates, LLC*, to support her claim that the affidavits made Defendants' fraud "self-concealing" and granted legitimacy to the Referee's Report of Sale, and as a result, Plaintiff "had no reason to suspect the fraud at an earlier point in

time." (Pl.'s Opp'n 15–16 (citing No. 15-CV-8098, 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016).)  In *Toohey*, the plaintiff plausibly alleged that the defendant-debt collectors submitted false affidavits claiming they personally reviewed the "account-level documentation" corroborating the debt's existence and amount, when they had not, and failed to attach any account-level documentation. *Toohey*, 2016 WL 4473016, at *1 n.3, 6–7, 6 n.8.  In addition, the plaintiff alleged that the defendant-debt collectors prohibited the defendant-counsel from directly contacting original creditors and debt sellers and, therefore, the defendant-counsel "could not itself confirm the legitimacy or accuracy of any debt or amount claimed." *Id.* at *3.  The court in *Toohey* therefore concluded that the defendants' conduct was self-concealing because it contained information that "*only* the [d]efendants could be aware." *Id.* at *6 (emphasis added). In contrast in this case, the affidavits were filed along with the Referee's Report of Sale that "revealed" the calculations using the judgment amount instead of the mortgage principal.  As a result, the affidavits did not contain information that only Defendants knew because it was included in the record, and therefore Plaintiff has not shown "self-concealing" fraud. *See Sejin Precision Indus. Co. v. Citibank, N.A.*, No. 16-CV-6910, 2017 WL 4350323, at *5 (S.D.N.Y. June 28, 2017) (finding the plaintiffs failed to allege defendants' fraud was self-concealing through a "general allegation that [the] defendants 'engaged in secret and surreptitious activities' in order to conceal their misconduct"), *aff'd*, 726 F. App'x 27 (2d Cir. 2018); *cf. Michelo*, 419 F. Supp. 3d at 697–98 (finding the defendants' affidavits in their default filings were inherently self-concealing because they alleged information regarding business records only the defendants knew and the plaintiffs could not discover with reasonable diligence); *see also Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) ("Failure of a plaintiff to plead facts to suggest that the defendants sought to conceal these violations or [the conduct was self-concealing] . . . deprive[s] the plaintiff of any basis for taking

31

advantage of equitable tolling." (citing *Wade v. Rosenthal, Stein & Assocs.*, No. 11-CV-5672, 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012))).

Second, Plaintiff does not show Defendants' alleged concealment specifically prevented Plaintiff's discovery of her claims. Plaintiff alleges that *both* the MidFirst Affidavit, (Pl.'s Opp'n 25), and referee's affidavit, (*id.* at 16), lent legitimacy to the State Court Action and allegedly prevented Plaintiff from exercising reasonable diligence. Despite the referee's affidavit affirming that the Referee's Report of Sale was "in all respect true and correct" and an "accurate and complete report of the deposition of the proceeds of such sale," (*id.*), Plaintiff fully blames Defendants for the interest miscalculation approved in the State Court Action documents with unsubstantiated claims that Defendants created a "fraudulent scheme" and presented it in the State Court Action, (*see id.* at 10, 18, 25). Plaintiff alleges without factual support that Defendants' "scheme employed standardized fraudulent calculation methods across dozens if not hundreds of foreclosures," (*see id.* at 18), but Plaintiff does not name any additional foreclosure action involving Defendants or provide any other factual support for the statement, (*see* Am. Compl. ¶ 70). Plaintiff alleges no facts to indicate the referee's or the state court's own determinations in the State Court Action were part of a "scheme," (*id.* ¶ 11), or that Defendants' filings "were [ ] ratified by the [state] court without any contemporaneous judicial review," (Pl.'s Opp'n 4). Plaintiff only alleges that Defendants and the referee used the same "inflated interest figures using unlawful methods," and on this basis alone, Plaintiff alleges that the state court's determinations were not independent and Defendants caused Plaintiff's injuries. (*Id.* at 10; *see* Am. Compl. ¶¶ 29, 57–58.) This is insufficient to show that Defendants' conduct alone prevented Plaintiff from discovering her claims, especially because all of the calculations in the filings were publicly filed. *See Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) ("[The plaintiff's] attempt to invoke equitable tolling is unavailing because he pleads

32

in only a conclusory fashion that [defendant-]appellees prevented him from discovering the alleged violation."); *Qureshi v. People's United Bank*, No. 18-CV-163, 2020 WL 2079922, at *13 (D. Vt. Apr. 30, 2020) (finding equitable tolling did not apply because the plaintiffs failed "to plead with particularity that [defendant] fraudulently concealed its wrongdoing").

Third, Plaintiff fails to sufficiently allege reasonable diligence because she neither pleads any action taken to investigate her claims, nor provides facts from which the Court can infer reasonable diligence. In the Amended Complaint, Plaintiff states in conclusory fashion that she "could [not] have discovered, even upon reasonable exercise of diligence," Defendants' "fraudulent scheme," (Am. Compl. ¶ 164), and the affidavits attached to the Referee's Report of Sale gave her "no reason to question the truthfulness of [the Referee's Report of Sale]," (Pl.'s Opp'n 16). This is contrary to the allegations in the Amended Complaint that Defendants' interest calculations were "revealed," (Am. Compl. ¶ 62), and therefore Plaintiff could have conducted her own inquiry. Further, the State Court Action docket shows that Plaintiff was represented by counsel in the State Court Action, who could have reviewed the filings.[13] (*See, e.g.*, Affirmation of Emergency; Order dated Feb. 26, 2019, annexed to Frenkel LLP's Mot. as Ex. E, Docket Entry No. 32-1 (denying Pl.'s Order to Show Cause).) "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh*, 445 F. App'x at 378 (citing *Armstrong*, 699 F.2d at 90); *Litovich v. Bank of Am. Corp.*, No. 20-CV-

---

[13] The docket of the State Court Action demonstrates Plaintiff had counsel, Noor A. Saab, who had previously sought to vacate the Judgment of Foreclosure and Sale on Plaintiff's behalf. (Affirmation of Emergency Re Order to Show Cause dated Sep. 12, 2018 ("Affirmation of Emergency"), annexed to MidFirst's Mot. as Ex. 1; Docket Entry No. 33-3.) However, Plaintiff does not allege her counsel's malpractice "is an extraordinary circumstance" that warrants equitable tolling. Attorney incompetence alone is usually insufficient to meet the standard for equitable tolling. *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *10 (D. Conn. Dec. 3, 2025) ("Even where the extraordinary circumstances . . . involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time." (quoting *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004))), *appeal docketed*, No. 26-26 (2d Cir. Jan. 7, 2026).

3154, 2025 WL 2521039, at *18 (S.D.N.Y. Sep. 2, 2025) (finding the plaintiffs did not sufficiently plead reasonable diligence because they failed to name a single action they took and pled only conclusory allegations that the defendants' conspiracy and concealing conduct prevented the discovering of their injury); *see Hinds Cty.*, 620 F. Supp. 2d at 521 ("Due diligence is not adequately pled if [the] plaintiffs 'did not allege in the [complaint] that they exercised due diligence' or if they 'make no allegation of any specific inquiries of [the defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'" (alterations in original) (quoting *In re Merrill Lynch*, 154 F.3d at 60)); *see also Conklin*, 2013 WL 4083279, at *7 (finding equitable tolling did not apply to the plaintiffs' FDCPA cases because the plaintiffs "relied solely on reassuring statements that [the d]efendants made and thus, were not sufficiently diligent").

Other than the doctrine of fraudulent concealment tolling which Plaintiff does not demonstrate applies, Plaintiff's Amended Complaint contains no facts suggesting an "extraordinary circumstance" that might otherwise entitle her to equitable tolling. *See Saint-Jean*, 129 F.4th at 142 (stating equitable tolling requires (1) "that some extraordinary circumstance stood in [the plaintiff's] way" and (2) "that [the plaintiff] pursued [his or her] rights diligently" (quoting *Doe*, 76 F.4th at 71)). Therefore, the Court finds that all of Plaintiff's claims are time-barred, and equitable tolling does not apply.

### d. *Res judicata* and collateral estoppel

Defendants also move to dismiss the action on the grounds that Plaintiff's claims are barred by *res judicata* and collateral estoppel. (MidFirst's Mem. 17–19; MidFirst's Reply 5–6; Frenkel LLP's Mem. 7–9; Frenkel LLP's Reply 2–4.) Even though all of Plaintiff's claims against Defendants are time-barred, the Court nevertheless addresses the parties' arguments regarding *res judicata* and collateral estoppel. For the reasons stated below, the Court finds *res*

34

*judicata* bars all of Plaintiff's claims against MidFirst, and, except for the Judiciary Law § 487 claim, collateral estoppel bars Plaintiff's claims against Frenkel LLP.

### i.    Plaintiff's claims against MidFirst are barred by *res judicata*

Defendants argue *res judicata* bars Plaintiff's claims against them.  (MidFirst's Mem. 17–18; MidFirst's Reply 5; Frenkel LLP's Mem. 7–8; Frenkel LLP's Reply 2–4.)  First, Defendants contend that all claims should be dismissed because the State Court Action resulted in a final judgment that was "an adjudication on the merits," (MidFirst's Mem. 17; Frenkel LLP's Mem. 7), that bars "claims raised here [that] could have been raised in the prior action," (MidFirst's Mem. 17).  Second, Defendants argue "the interest calculations that Plaintiff now challenges were clearly disclosed in the Referee's Report of Sale that was filed and served on Plaintiff in September [of] 2019[, and] Plaintiff had the opportunity to oppose the confirmation of the Referee's Report of Sale but elected not to do so."  (MidFirst's Mem. 17; *see* Frenkel LLP's Mem. 8; Frenkel LLP's Reply 4.)  Third, MidFirst argues that all the claims in this case are premised on the events that occurred in the State Court Action, and the only alleged facts outside of the State Court Action are "pure conjecture regarding unidentified filings in unspecified 'state and/or federal' court proceedings."  (MidFirst's Reply 5 (quoting Am. Compl. ¶ 14).)  Fourth, Frenkel LLP argues that Plaintiff had a full and fair opportunity to raise all of the claims at issue in this case in the State Court Action because Plaintiff was represented by counsel in the State Court Action and unsuccessfully filed an Order to Show Cause to vacate the Judgment of Foreclosure and Sale.  (Frenkel LLP's Mem. 8; Frenkel LLP's Reply 4; *see* Affirmation of Emergency.)  Fifth, Frenkel LLP contends *res judicata* applies to Plaintiff's claims against it because Frenkel LLP was in privity with MidFirst during the State Court Action.  (Frenkel LLP's Mem. 7–8; Frenkel LLP's Reply 2–3.)  Sixth, in the alternative, Frenkel LLP argues it "need not be in privity with MidFirst to assert a *res judicata . . .* bar" since *res*

35

*judicata* only requires "the party *against whom* the issue was previously decided," Plaintiff, to be in privity with the party raising the issue in the present action, Frenkel LLP. (Frenkel LLP's Reply 3.)

Plaintiff argues *res judicata* does not apply because (1) her claims do not arise out of the same facts that determined the underlying foreclosure judgments, and (2) Defendants lack privity. (Pl.'s Opp'n 8.) First, Plaintiff argues this case and the State Court Action involve "completely different causes of action" because they are "unquestionably based on different facts" that "arose independently of the facts relevant to the underlying [State Court Action]." (*Id.* at 9–10.) Plaintiff contends this case "does not concern the origins and assignment of the mortgage" but different facts regarding "Defendants' submission of fraudulent interest calculations during the post-action stage of foreclosure litigation." (*Id.* at 10.) Second, Plaintiff argues Frenkel LLP lacks "a cognizable personal interest" in the mortgage principal, the subject of the underlying State Court Action, and therefore Frenkel LLP cannot establish privity with MidFirst. (*Id.* at 8–9 (quoting *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022)).)

Federal courts have "consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [the previous] action." *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (quoting *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008)); *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)); *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Worthy-Pugh*, 664 F. App'x at 22–23 (affirming a district

36

court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action for mortgage fraud was precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ." *Allen*, 449 U.S. at 96.  To prove claim preclusion under New York law, a defendant must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see also Hereford Ins. Co. v. Shelly*, 243 N.Y.S.3d 495, 496 (App. Div. 2025) ("One linchpin of *res judicata* is an identity of parties actually litigating successive actions against each other: the doctrine applies only when a claim between the parties has been previously brought to a final conclusion.'" (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021))); *Pawling Lake Prop. Owners Ass'n v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to *res judicata*).

The privity inquiry turns on "whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action]."  *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (alterations in original) (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).  New York law provides that privity extends to parties "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action."  *Nuseiri v. Kosher Bravo Pizza LLC*, No. 25-CV-764, 2025 WL 3687597, at *3 (E.D.N.Y. Dec. 19, 2025) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126

37

(2d Cir. 1997)); *see also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at \*6 (E.D.N.Y. Mar. 11, 2016) (finding that the defendants, who were not named in a state court foreclosure action, were in privity with the state-court plaintiff because of their alleged interests in the federal plaintiff's/state-court defendant's mortgage); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (same); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171, 171 n.12 (E.D.N.Y. 2010) (same).

The Second Circuit has held that an attorney-client relationship, without more, is insufficient to establish privity between counsel to a party in the prior action and that party itself. *See Hansen*, 52 F.4th at 101 (applying New York law and finding no privity where "[counsel] did not have a cognizable personal interest in the subject of the [prior] action"); *Weir v. Montefiore Med. Ctr.*, No. 23-CV-4468, 2023 WL 5747642, at \*4 (S.D.N.Y. Sep. 6, 2023) (finding attorneys were not in privity because an attorney-client relationship alone did not establish privity (citing *id.*)), *reconsideration denied*, 2024 WL 2049411 (S.D.N.Y. May 6, 2024), *aff'd*, No. 24-1527, 2025 WL 289497 (2d Cir. Jan. 24, 2025) (summary order), *cert. denied*, 146 S. Ct. 612 (2025). Even when the plaintiff's later claims allege misconduct or fraud in the prior action by counsel and the client, it is still insufficient to establish privity. *See Hansen*, 52 F.4th at 101 ("[The plaintiff's] general and conclusory allegations that [counsel] and [client] 'colluded' in bringing the state suit are insufficient to overcome that deficiency in [counsel's privity] claim . . . ."); *Weir*, 2023 WL 5747642, at \*4 (citing *id.*) (same).

MidFirst has satisfied the elements of *res judicata*, but Frenkel LLP has failed to establish privity. First, the state court entered a Judgment of Foreclosure and Sale on the Subject Property and a Confirmation Order against Plaintiff, which are adjudications on the merits. *See De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 645 (2d Cir. 2012) (affirming a district court's dismissal of an action on claim preclusion grounds where the plaintiff's action

38

was related to a prior state court foreclosure action because "'[u]nder New York law, a final judgment on the merits of an action precludes' . . . 'all other claims arising out of the same transaction or series of transactions'" (quoting *Giannone*, 548 F.3d at 193–94)); *Gurevitch v. Emerald Green Prop. Owners Ass'n*, No. 23-CV-8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (foreclosure action resulting in judgment of foreclosure is adjudication on the merits) (citing *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024)); *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp. 3d 196, 201 (D. Conn. 2024) (concluding foreclosure action was an adjudication on the merits where the state court issued a judgment of foreclosure and sale and subsequently issued an order approving the sale); *see also Fequiere*, 2016 WL 1057000, at *5 (holding that a state court's summary judgment order in favor of the foreclosure plaintiff "operate[d] as a final adjudication on the merits for *res judicata* purposes").

Second, MidFirst was a party in the State Court Action. *See Burton*, 738 F. Supp. 3d at 290 (finding the second element was met where the plaintiff was a defendant in the foreclosure action). Frenkel LLP, however, has not established privity with MidFirst in the State Court Action as required for the *res judicata* bar to apply because Frenkel LLP neither argues that it has a "cognizable personal interest in the subject of the state foreclosure action" beyond the attorney-client relationship, nor does it argue other circumstances such that privity would be appropriate. *See Hansen*, 52 F.4th at 101 (finding counsel was not in privity with their client for purpose of *res judicata* because counsel only alleged an attorney-client relationship in the state court foreclosure action); *Gurevitch*, 2025 WL 642347, at *7 (same).[14]

---

[14] Even accepting Frenkel LLP's argument that it is only required to show privity with Plaintiff and not MidFirst for *res judicata* to apply, Frenkel LLP has failed to demonstrate privity with Plaintiff because Frenkel LLP does not rely on any allegations establishing that its interests were aligned with the parties to the State Court Action apart from its attorney-client relationship with MidFirst. *Nuseiri v. Kosher Bravo Pizza LLC*, No. 25-CV-764, 2025 WL 3687597, at *3 (E.D.N.Y. Dec. 19, 2025) (finding the defendants failed to establish privity by failing to allege

Lastly, Plaintiff's claims could have been brought in the State Court Action.  Plaintiff asserts claims based on Defendants' alleged misconduct during the State Court Action, including that the Judgment of Foreclosure and Sale authorized "illegal" compound interest, (*see* Am. Compl. ¶ 43), the inclusion of allegedly incorrect interest calculations in the Referee's Report of Sale, (*id*. ¶¶ 62–66), and the state court's confirmation of those calculations, (*see id.* ¶¶ 45, 68). Plaintiff's argument that this case involves "completely different causes of action" that arose "independently" of the State Court Action during the post-action stage of the foreclosure litigation, (Pl.'s Opp'n 9–10), directly contradicts her pleading where she alleges that "a foreclosure action does not end immediately after the foreclosed property is sold," (Am. Compl. ¶ 61), but continues with the Referee's Report of Sale that "revealed the Defendants' fraudulent scheme," (*id.* ¶ 62).  Therefore, Plaintiff's allegations of misconduct concern Defendants' actions prior to and during the State Court Action which were "revealed" in the State Court Action filings before the Confirmation Order.  (*See id.* ¶ 62.)  *See Garcha v. City of Beacon*, 232 F. App'x 74, 75 (2d Cir. 2007) ("Later claims arising out of the same factual grouping as an earlier litigated claim are barred, even if the later claims are based on different legal theories or seek dissimilar or additional relief.").

In support of her argument that the claims in this case involve different facts, Plaintiff cites to cases where courts found *res judicata* did not bar the plaintiffs' claims involving newly alleged facts of the defendants' fraudulent scheme of filing false and deceptive documents in the underlying debt collection proceedings.  (Pl.'s Opp'n 10 (first citing *Toohey*, 2016 WL 4473016,

---

facts demonstrating their interests were represented in the earlier litigation); *Jones v. Grisanti*, No. 22-CV-145, 2024 WL 3415361, at *10 (W.D.N.Y. July 15, 2024) (finding counsel was not in privity with the defendant-bank in state foreclosure action because counsel did not argue that they had a "cognizable personal interest" in the state foreclosure action, "nor do they point to any particular circumstances indicating that a finding of privity would be appropriate here").

at *5; and then citing *Michelo*, 419 F. Supp. 3d at 690).)[15]  Those cases can be distinguished because they involved significantly more voluminous allegations of fraud that revealed facts not present in the underlying debt-collection lawsuits.  *See Toohey*, 2016 WL 4473016, at *3–5 (*res judicata* did not apply because the plaintiff alleged the debt-buying company submitted affidavits without "account-level documentation" in thousands of cases and prohibited the debt-buying company's law firm from directly contacting original creditors and debt sellers and, therefore, the debt-buying company's law firm "could not itself confirm the legitimacy or accuracy of any debt or amount claimed" in the state debt-collection action); *see also Michelo*, 419 F. Supp. 3d at 690 (*res judicata* did not apply because the plaintiff alleged that the defendants provided affidavits with deceptive statements revealing facts that "were not at all 'present in the [ ]' [foreclosure] proceeding" in at least six specific instances).  Although MidFirst submitted an affidavit in the State Court Action, unlike *Toohey* and *Michelo*, the accounting of the debt in this case was fully "revealed" on the record and Plaintiff could have challenged the accuracy of the calculations and final judgment amount in the State Court Action.  In addition, Plaintiff solely relies on the interest miscalculation by Defendants to allege fraud and then speculates about unlawful submissions in this and other state and federal court proceedings without providing any support.  (*See* Am. Compl. ¶ 14.)  Not only could Plaintiff have asserted these claims in defense of the State Court Action where she had representation, Plaintiff actually filed an Order to Show Cause on September 12, 2018 in the State Court Action, seeking to vacate the Judgment of

---

[15] Plaintiff also cites to *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV-99, 2017 WL 6757224, at *4 (S.D.N.Y. 2017).  In *Clark*, the plaintiff's cause of action based on allegedly false statements concerning interest owed in the state court action was barred by *res judicata*, but the plaintiff's cause of action asserting deceptive filings was not barred by *res judicata*.  *Id.*  The court in *Clark* found the claim was not barred by *res judicata* because the claim arose from facts unrelated to the defendants' right to collect on the underlying debt.  *Id.*  In contrast, Plaintiff has not alleged any facts in this case that are separate from Defendants' right to collect on the mortgage and the information in the MidFirst Affidavit was on the record in the State Court Action.  Accordingly, *Clark* does not support Plaintiff's argument.

41

Foreclosure and Sale prior to the foreclosure auction and Confirmation Order, which the judge

denied.  (Order dated Mar. 18, 2019 (denying Pl.'s Order to Show Cause).)  Thus, Plaintiff could

have asserted all of her claims in the State Court Action as counterclaims because they are based

on conduct revealed in the State Court Action.[16]  *See De Masi*, 481 F. App'x at 646 ("[T]he

district court correctly determined that [the plaintiff] was precluded from relitigating her claims

in federal court because the New York Supreme Court had previously entered final judgment in

three cases arising out of the same set of operative facts, namely, the . . . foreclosure on [the

plaintiff's] home."); *Ank Bey El v. CitiMortgage, Inc.*, No. 25-CV-2317, 2025 WL 3552702, at

*17 (E.D.N.Y. Dec. 11, 2025) (finding *res judicata* barred all of the plaintiff's claims which

stemmed from the state court foreclosure action); *Massie*, 734 F. Supp. 3d at 201 (barring the

plaintiff from raising claims that arose out of the same mortgage transaction as the prior

foreclosure action including claims premised on a "false affidavit" filed in the prior foreclosure

---

[16]  Although New York State follows permissive counterclaim rules, "the Second Circuit has interpreted New York's *res judicata* law [ ] broadly to 'apply to all claims that could have been raised in a prior proceeding.'"  *Bordonaro v. FCI Lender Servs., Inc.*, No. 22-CV-2545, 2025 WL 2753175, at *4 (E.D.N.Y. Sep. 28, 2025) (quoting *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed*, No. 20-1138 (2d Cir. Aug. 4, 2020)); *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 295 (E.D.N.Y. 2024) (holding plaintiff's claims for FDCPA, Truth in Lending Act ("TILA"), and GBL § 349 were based on the same facts as the underlying foreclosure action and were therefore barred by *res judicata*); *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-3783, 2020 WL 5658776, at *10 (E.D.N.Y. Sep. 23, 2020) ("To the extent [RICO and GBL § 349] claims were not raised in the state foreclosure actions, they could have been raised in those actions as they are part of the same transaction[] at issue there — [ ] the foreclosure of the property."); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding that the RICO, FDCPA, Consumer Fraud Protection Act, and Real Estate Settlement Procedure Act ("RESPA") claims asserted by the plaintiff "either were, or could have been, raised in the [foreclosure] [a]ction" and noting that "a later claim could have been raised in the prior action if it 'aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief'" (third and fourth alterations in original) (quoting *Segreto v. Town of Islip*, No. 12-CV-1961, 2013 WL 572435, at *11 (E.D.N.Y. Feb. 12, 2013))); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (finding the plaintiffs' RICO claims barred because they were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale").

action because they could have been raised in that prior action); *Swiatkowski*, 745 F. Supp. 2d at 172 (finding that the plaintiff's claims were or could have been brought in a state court foreclosure action where the plaintiff's claims were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale against [the plaintiff]"); *see also Fequiere*, 2016 WL 1057000, at *7 (finding that the plaintiff's claims alleging "that [the] defendants improperly obtained [a] [f]oreclosure [j]udgment" were or could have been brought in a state foreclosure action against her property); *Graham*, 156 F. Supp. 3d at 509 (collecting cases and finding that a plaintiff's claims were or could have been brought in a state court foreclosure action because "New York courts have held that a defendant in a foreclosure action should assert claims . . . [related to] the mortgage agreement as defenses against the plaintiff lender in the original foreclosure action").

Accordingly, Plaintiff's claims against MidFirst, including claims arising under the FDCPA, GBL § 349, RICO, unjust enrichment, *prima facie* tort, and conversion are barred by *res judicata*.[17]  *See Burton*, 738 F. Supp. 3d at 295 (holding that *res judicata* barred the plaintiff's claims for FDCPA, TILA, and GBL § 349 because they arose "out of the same transaction or series of transactions" as the issue in the foreclosure action); *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 21-CV-4575, 2022 WL 4226025, at *3 (S.D.N.Y. Sep. 13, 2022) (*res judicata* barred claims the plaintiff intended to assert for breach of fiduciary duty, accounting, conversion, constructive trust, replevin, intentional misrepresentation, and breach of contract because they could have been litigated in the foreclosure action); *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *12 (S.D.N.Y. Mar. 29, 2019) (holding the plaintiff's RICO, wire fraud and fraud and deceit, FDCPA, RESPA, TILA, and unjust

---

[17]  Because the Court finds that all of Plaintiff's claims against MidFirst are barred by *res judicata*, the Court does not address the collateral estoppel arguments with respect to MidFirst.

43

enrichment claims were barred by *res judicata* because they were available to plaintiff in state foreclosure proceedings), *aff'd*, 820 F. App'x 20 (2d Cir. 2020).

### ii. Collateral estoppel bars Plaintiff's claims against Frenkel LLP, except for the Judiciary Law § 487 claim

Frenkel LLP argues collateral estoppel bars Plaintiff's claims for the same reasons as the application of *res judicata*. (Frenkel LLP's Mem. 8–9; Frenkel LLP's Reply 2–4.) In support, Frenkel LLP contends the State Court Action necessarily determined the issues, and Plaintiff had an opportunity to previously litigate the claims. (Frenkel LLP's Mem. 8–9; Frenkel LLP's Reply 2–3.) Frenkel LLP also argues privity is not required to assert a collateral estoppel bar. (Frenkel LLP's Reply 3.)

Plaintiff argues that collateral estoppel does not apply because (1) this case involves "vastly different issues of fact" than the State Court Action, and (2) Plaintiff did not have a full and fair opportunity to litigate the issues with Defendants. (Pl.'s Opp'n 11.) In support, Plaintiff asserts similar arguments as her *res judicata* arguments. First, Plaintiff contends that this case does not involve facts relevant to the Judgment of Foreclosure and Sale, but rather, Defendants' "unlawful methods" of interest calculation which they submitted to the referee after the entry of the Judgment of Foreclosure and Sale. (*Id.* at 11–12.) Second, Plaintiff alleges she did not have a full and fair opportunity to litigate the issues because of the "self-concealing nature of Defendants' fraudulent scheme." (*Id.* at 12.) Third, Plaintiff argues it is "more prudent to prosecute Defendants in a different suit that specifically addresses the fraud and a venue appropriate for federal claims, rather than using the state foreclosure proceeding to resolve a wholly new case." (*Id.*)

Under New York law, issue preclusion, or collateral estoppel, bars the relitigation of issues where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair

44

opportunity to litigate the issue in the first proceeding." *Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670, at *2 (2d Cir. May 7, 2024) (summary order) (quoting *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007)); *Scuderi-Hunter v. Merklen*, No. 23-542, 2024 WL 1005793, at *2 (2d Cir. Mar. 8, 2024) (summary order) (quoting *Hoblock*, 422 F.3d at 94); *CIT Bank, N.A. v. Donovan*, 856 F. App'x 335, 337 (2d Cir.2021) (quoting *Hoblock*, 422 F.3d at 94); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (quoting *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)); *Cruz v. N.Y.C. Transit*, No. 24-CV-89, 2025 WL 209598, at *9 (S.D.N.Y. Jan. 16, 2025) (quoting *Moccio v. N.Y. State Off. of Ct. Admin.*, 95 F.3d 195, 200 (2d Cir. 1996)), *report and recommendation adopted sub nom.*, *Cruz v. N.Y.C. Transit Auth. - MTA*, No. 24-CV-89, 2025 WL 618557 (S.D.N.Y. Feb. 26, 2025), *appeal dismissed sub nom.*, *Cruz v. N.Y.C. Transit, MTA*, No. 25-729, 2025 WL 2747900 (2d Cir. July 24, 2025). Collateral estoppel does not require identical parties, but "[t]he party advocating for a court to apply collateral estoppel must show 'that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party.'" *Hansen*, 52 F.4th at 101 (quoting *Buechel v. Bain*, 740 N.Y.S.2d 252 (2001)). The collateral estoppel analysis under New York law is essentially the same as under federal law. *See Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) ("Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action."); *Koch v. Bobcat of N.Y., Inc.*, No. 19-CV-7081, 2025 WL 746023, at *5 n.10 (E.D.N.Y. Mar. 7, 2025) ("[E]ven if the [c]ourt were to engage in the collateral estoppel analysis applied under New York law, the result here would be the same."); *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 580 (S.D.N.Y. 2003) ("The doctrine of collateral estoppel — also known as issue preclusion — operates almost identically under federal and New York State law .

45

. . ." (citing *Postlewaite*, 333 F.3d at 47–48)).  Under federal law, the four elements of collateral

estoppel are: "(1) the issues in both proceedings must be identical; (2) the issue in the prior

proceeding must have been actually litigated and actually decided; (3) there must have been a

full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously

litigated must have been necessary to support a valid and final judgment on the merits."  *Clark v.*

*Hanley*, 89 F.4th 78, 100 n.28 (2d Cir. 2023) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d

295, 304 (2d Cir. 1999)); *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79–80 (2d Cir. 2019)

(quoting *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)); *United*

*States v. Dominguez*, 712 F. App'x 100, 102 (2d Cir. 2018) (quoting *Gelb v. Royal Globe Ins.*,

798 F.2d 38, 44 (2d Cir. 1986)).

### 1.    Plaintiff's claims against Frenkel LLP arising under FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion

Plaintiff's claims for FDCPA, GBL § 349, RICO, negligence, gross negligence, legal

malpractice, *prima facie* tort, and conversion are based exclusively on her underlying allegations

that Defendants filed fraudulent or deceptive documentation with interest miscalculations in the

State Court Action.  (*See* Am. Compl. ¶¶ 43, 45, 62–66, 68.)  The state court decided against

Plaintiff in the State Court Action when it determined the interest calculations and foreclosure

were valid.  *See Hansen*, 52 F.4th at 101 (finding collateral estoppel barred the plaintiff's fraud

and negligence claims against the attorney-defendants because the plaintiff's claims were based

on attorney-defendants' alleged fraudulent representations in the foreclosure litigation except for

the plaintiff's Judiciary Law § 487 claim); *Weir*, 2023 WL 5747642, at *6 (finding collateral

estoppel barred the plaintiff's claims against the attorney-defendants, except for his Judiciary

Law § 487 claim, because the underlying allegations "rise or fall on his underlying allegations of

discrimination and other misconduct by the [represented-defendants]").  As stated *supra* in

46

Section II.c.ii, Plaintiff's claims against Frenkel LLP, including FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion, rest solely on facts supporting the State Court Action, including interest miscalculations in false or fraudulent filings on behalf of MidFirst.  While Frenkel LLP is not in privity with Plaintiff or MidFirst, the state court decided against Plaintiff in the State Court Action, and Plaintiff's claims are therefore barred by collateral estoppel.  *See Hansen*, 52 F.4th at 101 (finding the state court decided against the plaintiff in state court foreclosure action when it determined the mortgage was valid); *see also Munroe v. Specialized Loan Servicing LLC*, No. 23-CV-3083, 2025 WL 974259, at *5 (E.D.N.Y. Mar. 31, 2025) (collateral estoppel barred the plaintiff's FDCPA claim based on the state foreclosure action); *Helberg v. Wells Fargo Bank, Nat'l Ass'n*, No. 23-CV-8073, 2025 WL 581495, at *9 (E.D.N.Y. Jan. 22, 2025) (finding collateral estoppel barred the plaintiffs' causes of action for TILA, common law fraud, conspiracy to commit common law fraud, forgery, and breach of contract because the state court "necessarily decided that the mortgage agreement and any relevant attending documents were valid" in the underlying foreclosure action), *report and recommendation adopted*, 2025 WL 580368 (E.D.N.Y. Feb. 21, 2025); *Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-CV-826, 2023 WL 8283148, at *6 (E.D.N.Y. Nov. 30, 2023) (holding collateral estoppel barred the plaintiff's claims raised for the first time in the federal court action regarding the defendants' fraudulent conduct in the state court foreclosure action), *aff'd sub nom.*, *Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057, 2024 WL 4691006 (2d Cir. Nov. 6, 2024) (summary order); *Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344, 2017 WL 3267766, at *8 (S.D.N.Y. July 31, 2017) (finding collateral estoppel barred the plaintiff's fraud-based claims against the defendants, including RICO and GBL § 349, based on prior state foreclosure action).

47

Further, Plaintiff's argument that the MidFirst Affidavit and the referee's affidavit prevented her from fully and fairly litigating in the State Court Action is unavailing because Plaintiff alleges that Frenkel LLP's alleged fraudulent or negligent acts were "revealed" on the record prior to the Confirmation Order.[18]  Accordingly, collateral estoppel bars Plaintiff's FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion claims against Frenkel LLP.

### 2.    Plaintiff's claim against Frenkel LLP arising under Judiciary Law § 487

The Second Circuit has distinguished Judiciary Law § 487 claims from fraud claims because "the central question in a [Judiciary Law §] 487 action is not 'whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statements' (as it is in a fraud claim), but rather whether the false statements were made 'intentional[ly].'" *Hansen*, 52 F.4th at 102 (alteration in original) (first quoting *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (2020); and then citing *Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (2009)). The question of Frenkel LLP's intent to deceive Plaintiff as the attorneys representing MidFirst in the State Court Action has not been litigated.  To the extent this claim concerns Frenkel LLP's intent to deceive, it is not barred by collateral estoppel.  *Id.* (finding collateral estoppel did not bar the plaintiff's Judiciary Law § 487 claim because it "do[es] not depend entirely on a finding that the [underlying mortgage] was invalid").

However, as discussed above, the statutes of limitations bar all of Plaintiff's claims against Defendants, including Plaintiff's Judiciary Law § 487 claim.  In addition, *res judicata*

---

[18]  The Court discusses Plaintiff's argument that the MidFirst Affidavit and the referee's affidavit were "self-concealing" *supra* in Section II.c.ii.

bars all of Plaintiff's claims against MidFirst, and, except for the Judiciary Law § 487 claim, which is time barred, collateral estoppel bars Plaintiff's claims against Frenkel LLP.[19]

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions and dismisses the Amended Complaint.

Dated: March 27, 2026
       Brooklyn, New York

SO ORDERED:

                             /s/ MKB
                             MARGO K. BRODIE
                             United States District Judge

---

[19] The Court does not address the merits of Plaintiff's claims because each claim is barred by the applicable statute of limitations (FDCPA, GBL § 349, RICO, Judiciary Law § 487, negligence, gross negligence, legal malpractice, unjust enrichment, *prima facie* tort, and conversion) and on other grounds: *res judicata* bars all claims against MidFirst and collateral estoppel bars the FDCPA, GBL § 349, RICO, negligence, gross negligence, legal malpractice, *prima facie* tort, and conversion claims against Frenkel LLP.

49